```
        UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF WEST VIRGINIA

                  CHARLESTON
```

**RONALD E. WALKER,**

    **Movant,**

v.                                       **Case No. 2:01-cr-00103-01**
                                             **Case No. 2:03-cv-02193**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence, filed pursuant to 28 U.S.C. § 2255, on September 22, 2003 (docket sheet document # 112), which was supported by a "Brief and Memorandum" (# 117), and his "Amended/ Supplement to 28 U.S.C. § 2255 in Light of Blakely v. Washington, 542 U.S. ___ (2004)" (# 127). The original Motion was referred to this Magistrate Judge by Standing Order. On March 3, 2004, the undersigned filed Proposed Findings and Recommendation that the Motion be denied (# 121). On May 17, 2004, Movant timely filed objections which disclaimed some of the language in the Brief and Memorandum, and which announced that he was amending his Motion to present a claim that he was denied effective assistance of counsel when his attorney advised him not to accept the "48 month plea agreement offered by the government." (Objections, # 121, at 3.) Movant did not object to any of the proposed findings in the first

Proposed Findings and Recommendation. Movant and his wife both submitted affidavits on the plea agreement issue. (# 121, Exs. B and C.)

Upon review of the objections, the successor presiding district judge, the Hon. Joseph R. Goodwin, entered an Order Recommitting Case to the undersigned, noting that Movant "appears to disassociate himself from the previous arguments made on his behalf, opting instead to pursue an ineffective assistance of counsel claim based on plea negotiations early in the case." (Order entered May 24, 2004, # 126).

On July 19, 2004, Movant filed an "Amended/Supplement to 28 U.S.C. § 2255 in light of Blakely v. Washington, 542 U.S. ___ (2004)," in which he argues that his constitutional right to trial by jury on all facts so triable was violated at the time of sentencing . . . where these facts were used to increase punishment." (# 127, at 1.) Whereupon, the case was held in abeyance pending appellate rulings on the applicability of Blakely to the federal Sentencing Guidelines. (# 130).

On February 23, 2005, after the Supreme Court decided United States v. Booker, 543 U.S. ___ (2005), the undersigned directed the United States to expand the record to include a declaration under penalty of perjury of S. Benjamin Bryant, addressing the allegations of Mr. and Mrs. Walker's affidavits. The United States filed its Response and Mr. Bryant's affidavit on March 15, 2005 (#

132). On March 31, Mr. and Mrs. Walker both submitted affidavits in response (## 133 and 134). By Order entered June 24, 2005, the undersigned directed the United States to expand the record by filing and serving a true copy of any plea agreement(s) offered to attorneys Harvey D. Peyton or S. Benjamin Bryant concerning Movant (# 135). The United States filed its Response to that Order on July 15, 2005, advising that the government had not retained a copy of any such plea agreement (# 138).

As set forth in the Proposed Findings and Recommendation filed on March 3, 2004, Movant, Ronald E. Walker (hereinafter referred to as "Defendant"), is serving a 157 month period of imprisonment, to be followed first by a three year term of supervised release, and then a five year term of supervised release, upon his conviction by a jury of aiding and abetting mail fraud (Counts One, Three and Five), wire fraud (Counts Two and Four), and using fire in commission of a federal felony (Count Six), in violation of 18 U.S.C. §§ 2, 1341, 1343, and 844(h)(1). The District Court also imposed a special assessment of $600.00, and restitution in the amount of $137,394.09. (Judgment in a Criminal Case, entered February 28, 2002, # 78.)

Defendant's direct appeal was unsuccessful. United States v. Walker, No. 02-4233, 47 Fed. Appx. 639, 2002 WL 31104923 (4th Cir. Sept. 23, 2002). The mandate was issued on October 15, 2002 (# 107). No petition for a writ of certiorari was filed.

Defendant's Objections (# 125, the document which raises the issue concerning the plea agreement) states as follows:

> Before Attorney Harvey Peyton withdrew from the case, he tendered a **48** month plea deal from the Government to the Movant. After speaking to newly retained counsel, S. Benjamin Bryant, Movant made a decision, with his wife, Sheila Walker, to go to trial. This decision was based on counsel's "unequivocal guarantee" that the Government could not prevail in trial. **See** Affidavits of Ronald Walker and Sheila Walker in support (Exhibits "**B**" and "**C**").
>
> * * *
>
> **COUNSEL FOR THE DEFENSE, S. BENJAMIN BRYANT, WAS INEFFECTIVE IN NOT PURSUING THE 48 MONTH PLEA OFFER MADE TO THE FIRST ATTORNEY OF RECORD, HARVEY PEYTON, ESQUIRE**
>
> To warrant relief under Section[] 2255, the Movant must show that incompetence of counsel (S. Benjamin Bryant) caused him to go to trial instead of taking the **48** month affirmatively tendered to Harvey Peyton, Esquire. Both attorneys acted in concert with regard to their belief that Movant could not be convicted if he went to trial.
>
> Both attorneys told Movant that Charles Matthews and his sister, Lorrie Walker, would be testifying at trial. Moreover, S. Benjamin Bryant, after "guaranteeing" the Movant that **"He couldn't be convicted if he went to trial"**, never explained what his theory of defense would be at the time of trial. Certainly, where the Government witnesses received reduced charges based on their pleas of guilt and agreement to testify against the Movant, the defense attorney had to have a sound trial strategy going into trial.
>
> As a sheep led to the slaughter, Movant relied on the advi[c]e of counsel in his election to go to trial. Certainly, where Movant was "guaranteed" that he would not be convicted by defense Counsel(s) Harvey Peyton and S. Benjamin Bryant, he received "material misadvice" as the attorneys failed to gauge the strength of the Government's case.

> \* \* \*
>
> Clearly, Counsel for the defense had no strategy of defense available and was like a ship without a rudder at trial. The Movant alleges a plea agreement was tendered between Harvey Peyton and the Government of **48** months.
>
> \* \* \*
>
> At the time the plea agreement was tendered, the offer was **48** months imprisonment; however, defense Counsel, having "guaranteed" a win and after extracting Movant's life savings in legal fees, took the Movant to trial, knowing full well the strength of the Government's case.
>
> Movant wanted to take the **48** month deal, however, the defense attorney assured the Movant that the Government could not win this case.
>
> \* \* \*
>
> As the Relevant Conduct Guidelines dictate, the defense attorney's chances of winning this case where he had knowledge that four of the codefendants were testifying was quite an impossibility. Therefore, the "guarantee" made by Counsel rises to a level of deficient performance where this Movant was offered **48** months and after trial received **157** months.
>
> \* \* \*
>
> Movant does not complain of inadequate representation during trial. He claims that S. Benjamin Bryant's misconduct cost him the opportunity to consider the Government's **48** month plea offer with the constitutionally guaranteed assistance of counsel.

(Objections, at 5-6, 8-10, 13.) The specific assertions in the affidavits of Mr. and Mrs. Walker and Mr. Bryant are set forth in Exhibit A, appended to this document.

<u>The Claim in the Objections Does Not Relate Back and Is Untimely.</u>

Defendant's conviction was final on or about December 23,

5

2002, when the time for filing a petition for a writ of certiorari expired. His original Motion was filed on September 22, 2003, and was timely. On or about December 23, 2003, Defendant's one year period of limitation for filing claims pursuant to 28 U.S.C. § 2255 expired. His objections were filed on May 17, 2004; the objections are the first document filed by Defendant which raises the plea agreement issue. The Amended/Supplement raising the <u>Blakely</u> issue was filed on July 19, 2004. For the reasons stated below, both the objections and the Amended/Supplement were filed more than one year after Defendant's conviction was final; only the <u>Blakely</u> claim relates back to his original § 2255 Motion. Accordingly, the plea agreement claim should be dismissed.

Rule 12 of the Rules Governing Section 2255 Cases in the United States District Courts provided, at the time Defendant filed his objections and his Amended/Supplement, as follows:

> If no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules, or any applicable statute, and may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to motions filed under these rules.

The Rule was amended effective December 1, 2004, and now reads:

> The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.

The Advisory Committee Note on the amendment states that the changes "are intended to be stylistic and no substantive change is

intended."

Rule 81(a)(2), Federal Rules of Civil Procedure, states that "[t]hese rules are applicable to proceedings for . . . habeas corpus . . ., to the extent that the practice in such proceedings is not set forth in statutes of the United States, . . . or the Rules Governing Section 2255 Proceedings, and has heretofore conformed to the practice in civil actions."

Based on these two quoted rules, courts use Rule 15(c), Federal Rules of Civil Procedure, for guidance as to whether a proposed amendment, filed after the expiration of the one year period of limitation, relates back to the original claim(s). Rule 15(c) states as follows:

> **(c) Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when
> **(1)** relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> **(2)** the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> **(3)** the amendment changes the party or the naming of the party . . . .

In <u>Mayle v. Felix</u>, 125 S. Ct. 2562 (2005), the Supreme Court addressed Rule 15(c)(2) and the relation back of amendments to a habeas corpus petition in the context of 28 U.S.C. § 2254. The Court rejected the argument that the words "conduct, transaction or occurrence" refer to a defendant's trial, conviction or sentence.

The Court held that relation back will be permitted "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." 125 S. Ct. at 2574. The Court quoted approvingly from cases decided by circuit courts of appeals which restrict amended claims dependent upon events separate in "both time and type" from the originally raised episodes. Id., at 2571 (quoting United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999); United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000)).

The issues raised in Defendant's original § 2255 Motion all focused on the trial and sentencing: jury instructions, trial strategy and performance, alleged prosecutorial misconduct, sentencing guidelines application and proof, confrontation of witnesses, admission of hearsay, failure to file motions to suppress. The plea agreement issue raised in the Objections is separate in both time and type from the original claims. The plea agreement issue addresses events and advice of counsel prior to trial; the original claims were concerned with trial and post-trial matters. The plea agreement issue concerns the advice of counsel whether to plead guilty; the original claims addressed the trial and Defendant's assertion of his innocence. Accordingly, the undersigned proposes that the presiding district judge **FIND** that Defendant's plea agreement issue, raised in his Objections to the first Proposed Findings and Recommendation, differs in both time

and type of claim from his original § 2255 claims, and is barred by the one year period of limitation as untimely. It is respectfully **RECOMMENDED** that the plea agreement issue be dismissed.

The undersigned has examined Defendant's arguments with respect to Blakely, contained in the "Amended/Supplement," and has compared them with Ground Four in the original § 2255 motion, and concludes that the Blakely claim arose out of the conduct, transactions, or occurrences set forth in Ground Four; therefore it relates back.

Blakely has not been applied retroactively.

On January 12, 2005, the Supreme Court decided United States v. Booker, 125 S. Ct. 738, which reaffirmed the Court's holding in Apprendi, applied the holding in Blakely to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. The Booker holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). Defendant's case has concluded direct review and is final. Thus Booker does not apply, unless the Supreme Court rules that it is to be applied

retroactively to cases on collateral review.

Six Circuit Courts of Appeals have ruled that <u>Booker</u> does not apply retroactively to cases on collateral review. In <u>McReynolds v. United States</u>, 397 F.3d 479, 480-81 (7th Cir. 2005), the Court held:

> Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, ___ U.S. ___, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.
>
> *Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." ___ U.S. ___, 124 S. Ct. at 2523. It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid.* That is no less true of *Booker* -- or for that matter *Apprendi* itself. We held in *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." That, too, is equally true of *Booker*. No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.
>
> The remedial portion of *Booker* drives the point home. The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs. District judges must continue to follow

their approach *as guidelines*, with appellate review to determine whether that task has been carried out reasonably. No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently, *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.

\* \* \* The Court held in *DeStefano v. Woods*, 392 U.S. 631, and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more accurate. \_\_\_ U.S. at \_\_\_, 124 S. Ct. at 2525. What is more, *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing facts will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process. *See also Curtis*, 294 F.3d at 843-44.

We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005. That date, rather than June 24, 2004, on which *Blakely v. Washington*, \_\_\_ U.S. \_\_, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004, came down, is the appropriate dividing line.

In <u>Green v. United States</u>, 397 F.3d 101, 103 (2d Cir. 2005), the Second Circuit held that "neither <u>Booker</u> nor <u>Blakely</u> appl[ies] retroactively to [a] collateral challenge." In <u>Varela v. United States</u>, 400 F.3d 864, 868 (11th Cir. 2005), the Eleventh Circuit held "that <u>Booker</u>'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply

11

retroactively to a § 2255 on collateral review." In <u>Humphress v. United States</u>, 398 F.3d 855, 863 (6th Cir. 2005), the Sixth Circuit ruled that:

> We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law does not reach than did the judicial factfinding addressed in *Ring*. The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. *Beard [v. Banks]*, 124 S. Ct. [2504], 2513-14 [(2004)]. We hold that *Booker*'s rule does not either.

In <u>United States v. Price</u>, 400 F.3d 844, 848 (10th Cir. 2005), the Tenth Circuit held that <u>Blakely</u> was a new rule of criminal procedure that was not subject to retroactive application on collateral review. In <u>Lloyd v. United States</u>, 407 F.3d 608, 615-16 (3d Cir. 2005), the Third Circuit held that "<u>Booker</u> announced a rule that is 'new' and 'procedural,' but not 'watershed;'" thus it does not apply retroactively to § 2255 motions filed in cases which were final as of January 12, 2005.

Based on <u>McReynolds</u>, <u>Green</u>, <u>Varela</u>, <u>Humphress</u>, <u>Price</u>, <u>Rucker</u>, and <u>Lloyd</u>, the undersigned proposes that the presiding District Judge **FIND** that Movant's conviction was final before <u>Blakely</u> and <u>Booker</u> were decided, and that neither <u>Blakely</u> nor <u>Booker</u> applies retroactively on collateral review.

For the foregoing reasons, it is respectfully **RECOMMENDED** that the presiding District Judge deny Movant's Motion filed pursuant to 28 U.S.C. § 2255 and the "Amended/Supplement."

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Ronald E. Walker, and to counsel of record.

<table>
<tr><td>July 27, 2005<br>Date</td><td>/s/ Mary E. Stanley<br>Mary E. Stanley<br>United States Magistrate Judge</td></tr>
</table>

14

**EXHIBIT A**

**RONALD E. WALKER v. UNITED STATES OF AMERICA**

Case No. 2:03-cv-02193
Case No. 2:01-cr-00103

**COMPARISON OF STATEMENTS IN AFFIDAVITS**

**Existence of Plea Agreement**

Ronald Walker Affidavit 5/17/04
1.) I was offered a 48 month plea agreement/offer by Attorney Harvey Peyton just before he turned my case over to Attorney S. Benjamin Bryant.
2.) Attorney Harvey Peyton stated that the United States Attorney in this case made the initial plea offer.
7.) He (S. Benjamin Bryant) instructed me not to take the U.S. Attorney's plea offer.
11.) I told the Attorney (Bryant) that if even a remote chance existed of me being convicted I wanted to take the 48 month plea offer.

Sheila Walker Affidavit 5/17/04
14.) We discussed the Government's 48-month plea offer with Benjamin Bryant, but he advised us to go to trial and guaranteed us that we would win.

> Declaration of S. Benjamin Bryant 3/15/05
> 1. Mr. Peyton and I discussed the status of any plea negotiations prior to my representation of Mr. Walker; I do not remember a specific "48 month plea agreement/ offer" made by the government at that time.
>     I discussed the possibility of plea offers with Assistant United States Attorney Bryant Spann, lead attorney for the government, and with Mr. Walker. Prior to scheduled trial Mr. Spann offered a plea agreement pursuant to which Mr. Walker would plead guilty to one (or possibly more than one, at this time I do not recall) count of mail fraud in exchange for which the United States would dismiss the charge against Mr. Walker for use of fire to destroy equipment used in interstate commerce.
>     I analyzed the proposed plea agreement and possible applications of the sentencing guidelines. The case essentially involved claims that Mr. Walker and Mr. Matthews had burned two tractor trucks, and trailers, located on a paved parking lot in the West Side of Charleston, West Virginia, thereafter filed false

15

insurance claims (my recollection is that the total amount of dollar loss asserted was in the range of $150,000 to $175,000); although the Charleston Fire Department responded to the fire, no fire fighter or other person was put in realistic risk of personal injury or death. After reviewing and analyzing the plea offer in light of the sentencing guidelines, I advised Mr. Walker regarding the application of the sentencing guidelines to the plea agreement and to potential trial outcomes.

The guideline analysis, roughly confirmed by Mr. Spann in my conversations with him, indicated that if Mr. Walker accepted the plea agreement his potential range of sentencing was approximately 24 to 40 months and my best expectations, in the event the prosecution did not push hard to run up Mr. Walker's sentence, was that he would be facing a possible sentence of 2 to 3 years, possibly maybe 2 1/2. I thoroughly educated Mr. Walker on the operation and function of the sentencing guidelines. I do not recall that if Mr. Walker had accepted the plea offer that his sentence likely would have been "48 months;" rather, I believe Mr. Walker likely would have received a sentence of less than that. However, I did not advise Mr. Walker that he would receive any specific sentence. I tried to educate him as to the sentencing guidelines and to possible ranges of prison sentences in the event he was convicted at trial, or through a plea agreement.

I further advised Mr. Walker that if he rejected the plea agreement, and was convicted at trial, then it was my view that he was facing sentencing under the guidelines and statutes of at least 12 years, and perhaps as high as 15 years imprisonment because the use of fire charge carried a minimum mandatory and consecutive 10 year sentence. This, added to the possible guideline sentence based on the mail fraud aspects of the case, resulted in him facing approximately 12 to 15 years. I advised Mr. Walker of this, and of the obvious benefits of resolving the case by pleading guilty only to the mail fraud part of the case, and avoiding the mandatory and consecutive 10 years sentence.

From beginning to end of this matter, Mr. Walker advised me that he was not guilty of the charges, and that he did not participate in burning the trucks, and therefore his insurance claim was not fraudulent. I advised Mr. Walker that if he was innocent then I could not recommend he plead guilty; and that Judge Haden would not accept a guilty plea from him. However, if upon

further reflection he determined that he was in fact guilty of the mail fraud, then I recommended that it was to his best interests to take the plea offer. I also told him that decision was his personal decision alone, I do not decide whether a client proceeds to trial or takes a plea offer, I only try to educate him and make a recommendation.

Ronald Walker Affidavit 3/31/05
   He never talked to us about a 2 1/2 year plea bargain, . . ..
   * * *
   Ben never talked to me about a Plea Bargain. If he had've I would have definately [sic] took 2 1/2 years instead of 13 yrs.

   * * *
   He didn't instruct or advise me to reject the Government's Plea offer. He never told me about it at all though he should have insisted that I take it, knowing the evidence they had against me.

Sheila Walker Affidavit 3/31/05
   Plea bargaining was mentioned but to no extreme . . ..

   * * *
   Mr. Bryant says he only tried to educate Mr. Walker and make a recommendation. I do not recall "any" recommendations he made to us.

**"Guarantee" of Acquittal**
Ronald Walker Affidavit 5/17/04
6.) S. Benjamin Bryant told both my wife - Sheila Walker and I that he could not lose on the facts of this case in trial and guaranteed us that I would not be convicted. (He laughed about the evidence.)
7.) He (S. Benjamin Bryant) instructed me not to take the U.S. Attorney's plea offer. He said we would win in trial.
10.) I knew the co-defendants were going to testify and that false insurance claims had been filed before the trial and asked him (S. Benjamin Bryant) what he thought about the testifying co-defendants and the evidence against me and he kept telling me not to worry we would win in trial.

Sheila Walker Affidavit 5/17/04
13.) We went to trial based on his word that, "there is no way Ronnie could be convicted on these charges". * * *
14.) We discussed the Government's 48-month plea offer with Benjamin Bryant, but he advised us to go to trial and guaranteed us that we would win.

17

Declaration of S. Benjamin Bryant 3/15/05
        [Re: Ronald Walker 5/17/04 affidavit]
6.  I did not advise Mr. or Mrs. Walker that Mr. Walker "could not lose on the facts" of the case at trial; I never guaranteed to Mr. Walker or anyone that he would not be convicted; and I do not recall "laugh[ing]" about the evidence.
7.  I did not instruct or advise Mr. Walker to reject the United States Attorney's plea offer.  I never told nor guaranteed to Mr. Walker or anyone else that "we would win in trial."
        [Re: Sheila Walker 5/17/04 affidavit]
13.  I did not tell Mr. Walker that there is "no way [he] could be convicted on these charges."

Ronald Walker Affidavit 3/31/05
    Ben Bryant did snicker and tell my wife and I that he didn't see anyway they could convict me on the evidence they had.

                * * *

    Benjamin Bryant in his statement, said he believed the best defense was that my ex-wife and Mr. Matthews were so lacking in credibility that the jury should be left with a reasonable doubt, and that's one of the reasons he told us that he didn't see anyway they could convict me on the evidence they had, therefore we went to trial and here I am.

Sheila Walker Affidavit 3/31/05
    Mr. Bryant did state on several occasions that the government had a weak case on Mr. Walker due to the credibility of their witnesses.  Mr. Bryant would laugh as he sighted [sic; cited?] that he didn't believe the government was using a known crack user as their star witness.